PETER S. BAKER *vs.* TOWN OF ARLINGTON.

JAMES H. WALSH *vs.* SAME.

DELLA A. KELLY *vs.* SAME.

SHERVIE V. MacCULLY & another *vs.* SAME.

Middlesex. April 4, 1930. — May 27, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Evidence,* Of value of land; Opinion: expert. *Damages,* For property taken or damaged under statutory authority. *Eminent Domain.*

At the trial of a petition against a town under G. L. c. 79, §§ 12–14, for the assessment of damages resulting from the taking in 1927 of land for highway purposes under G. L. c. 82, §§ 21–25, it appeared that in 1923 the town under G. L. c. 41, §§ 80, 81, had established exterior lines for the way, and in 1924 had taken an easement over and in the land for sewer purposes under Sts. 1896, c. 282; 1904, c. 3; G. L. c. 79. Subject to an exception by the petitioner, the respondent was permitted to ask of one, admitted to be a qualified expert, in substance, whether, assuming that the petitioner's lot originally consisted of about ten thousand square feet, that in 1923 the town established exterior lines on the street "which was not then built, by reason of which" about three thousand eight hundred square feet "fell within those exterior lines, so that thereafter no part of that" three thousand eight hundred square feet could be used for any building purposes whatever, that in 1924 the town made "a similar taking

for sewer purposes so that thereafter the town had a right at any time to go into any part of that" three thousand eight hundred square feet "and lay sewers, excavate for them, lay as many sewers as the town felt necessary to lay, that it could enter at any time and dig up for the purpose of removing obstructions from sewers, etc.," — whether, such facts being assumed, in his opinion the three thousand eight hundred square feet covered by the two previous takings had any market value at the time of the taking for highway purposes which was the subject of the petition. The answer of the witness was that, in his opinion the three thousand eight hundred square feet before the last taking was of no market value. Later, and without exception by the petitioner, he answered that the taking caused no damages to the remaining property. The jury found damages in the sum of $1. The petitioner alleged exceptions, the bill including the judge's charge, in which he explicitly instructed the jury that they should consider the value of the entire tract both before and after the taking. *Held,* that

(1) There was nothing disclosed in the record which showed that the jury in considering the testimony of the witness under the instructions of the judge, were permitted to split up the area and base their verdict on the market value of the portion of land taken without considering the tract as a whole;

(2) The exception was overruled.

FOUR PETITIONS, filed in the Superior Court respectively on February 14, February 17, February 18 and May 3, 1928, for the assessment of damages alleged to have been caused by a taking of land in Arlington for highway purposes.

In the Superior Court, the petitions were tried together before *Williams,* J. Material evidence is stated in the opinion. After the admission, subject to the petitioners' exceptions, of the testimony by the witness Francis, described in the opinion, the petitioners moved that such testimony be struck out. The motion was denied. There was a verdict in each case of $1 for the petitioners. The only exceptions argued by the petitioners before this court were to the admission of the testimony of the witness Francis, described in the opinion, and to the denial of the motion to strike it out. The record included the entire charge to the jury.

The case was submitted on briefs.

*P. A. Hendrick,* for the petitioners.

*P. M. White. P. N. Jones & R. D. Gerould,* for the respondent.

PIERCE, J.   These four cases are petitions for the assessment of damages arising out of taking of land for highway purposes by the town of Arlington, on May 3, 1927, under G. L. c. 82, §§ 21–25; G. L. c. 79, §§ 12, 14.   They were tried together to a jury, which took a view accompanied by the trial judge.   At the close of the evidence the cases were submitted to the jury with instructions in no respect excepted to by any of the petitioners.   In each case a verdict was returned of $1 for the petitioner.   The cases came before this court on exceptions taken by the petitioners to parts of the testimony of an expert witness called in behalf of the respondent without objection being raised as to his qualifications.   The case of Baker is before us also on his exceptions to the exclusion of evidence of the expense to him which was caused by the lowering of the grade of the land taken, and in respect to an alleged injurious effect of the taking of his land upon a scheme or plan of division into lots of his remaining land.

It was in evidence that on December 17, 1923, prior to the taking in question, the town of Arlington duly established exterior lines for Gray Street under the provision of G. L. c. 41, §§ 80 and 81.   By said § 80 it is provided that a town accepting § 73 of chapter 41 relative to the appointment of a board of survey may "establish, in the manner provided for the laying out of town ways, the exterior lines of any way, the plan of which is approved under section seventy-four or seventy-five or under such special act; and thereafter no structure shall be erected or maintained between the exterior lines of the way so established, except that buildings or parts of buildings existing at the time of the establishment of said lines may remain and be maintained to such extent and under such conditions as may be prescribed by the board of survey of such town."   Section 81 provides that "Any person injured in his property . . . by the establishment . . . of exterior lines under section eighty may recover the damages so caused under chapter seventy-nine."   G. L. c. 79, § 12, provides that the damages for the taking of property "shall be fixed at the value thereof before the taking, and in case only part of a parcel of land

is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made."

On September 29, 1924, the town of Arlington took an easement for sewer purposes over and in the land within the exterior lines which had been established on December 17, 1923, and within the lines which now constitute Gray Street, in front of all the lots except the Baker lot, by a taking duly made under St. 1896, c. 282; St. 1904, c. 3, and G. L. c. 79. These statutes provide for the payment by the town of all damages sustained by reason of such taking, such damages, if not agreed upon, to be assessed by a jury in the Superior Court in the same manner as in the case of lands taken for highways. It is plain the amount of damages which the several petitioners were entitled to receive because of the taking of their lands for the purposes of a highway was to be ascertained upon consideration of the fact that, before the taking on May 3, 1927, those lands were subject to easements for sewer purposes, for the establishment of exterior lines — one or both easements as the fact might be — and that under these conditions the amount of the damages was to be measured by the diminution in the value of the property by reason of the taking of the easement for highway purposes. *Boston Chamber of Commerce* v. *Boston*, 195 Mass. 338. At the trial the petitioners testified as to the fair market value per foot of their several lots before the taking and estimated their damages to be the value of such lots so ascertained less the amount taken or the fair market value of the area remaining after the taking.

Upon the issues, whether the several petitioners had been damaged by the taking and the amount of such damage, the respondent put to its expert witness a hypothetical question which, save as it was required to be changed to state the name of the owner of the lot, the area of the lot as a whole, and the area of that part of the lot which was taken for highway purposes, in each case was as follows: "Now, Mr. Francis, I want you to assume that in regard to the MacCully lot here, that it originally consisted of

ten thousand three hundred and sixty-five square feet, that in 1923 the town of Arlington, by a duly recorded and effective taking, established exterior lines on Gray Street, which was not then built, by reason of which three thousand eight hundred forty-eight square feet fell within those exterior lines, so that thereafter no part of that three thousand eight hundred forty-eight square feet could be used for any building purposes whatever, I want you to assume that in the following year, 1924, the town of Arlington make a similar taking for sewer purposes so that thereafter the town had a right at any time to go into any part of that three thousand eight hundred forty-eight square feet, or any part of that space between the red lines and lay sewers, excavate for them, lay as many sewers as the town felt necessary to lay, that it could enter at any time and dig up for the purpose of removing obstructions from sewers, etc. etc., I want you to assume that these takings have been made at the times that I have specified, and assuming that I want to know whether in your opinion, on May 2, 1927, when the town made a third taking for a highway, between those same red lines, I want to know, whether in your opinion that three thousand eight hundred forty-eight square feet covered as I have said by the two previous takings, had any market value, and if so, what it was?"

The petitioners objected that the question in the form put was "not the proper way to ask it. The question is what was the fair market value of the property before the taking and what was the fair market value of the property after the taking." The trial judge then said: "Well, having in mind the general question . . . you may answer, Mr. Witness, what in your opinion was the fair market value of that particular strip . . . Before the taking." The petitioners, still contending that the form of the question was improper because the question related to the measure of damages to the property as a whole, the judge said: "There are different ways of asking these questions. You may center your attention on the particular part of the taking or you can ask questions to bring out the comparative values of the whole property before and after." Thereupon, sub-

ject to the exceptions of the petitioners, the witness in each case answered that in his opinion the parcel between the lines was of no market value. Subsequently, the expert witness in answer to the same hypothetical question and without exception by the petitioners was permitted by the trial judge to answer that in each case there was no damage to the remaining property.

On this part of the case the judge charged the jury as follows: "We have been dealing with this damage question in two ways. Some of the questions have been directed to the market value of the triangular piece of land actually taken and secondly as to the damage of the land which is remaining. Personally I feel that in this kind of a case you will probably get at it better by comparing the fair market value of the whole lot just before the taking with the fair market value of the whole lot right after the taking, but you may use either method, the result theoretically is the same. That is, compare the market value of the whole lot just before the taking and the market value of the whole lot just after the taking and you may ask yourselves what in fact was the fair value of the land actually taken and then ask yourselves secondly what the result or damage was to the land remaining and then by using the figures arrive at the difference, as answer to the two questions, you determine what the total damage, if any, to the whole lot was. Your difficulty, of course, is where you have a small strip of land like this. Counsel all agree there is little, very little opportunity for selling such a strip of land in the market. In other words, it has no real market value, although the taking of that strip of land may lessen the value of the land remaining. It is for you to say. In any event, what you are striving to arrive at, is the total damage to the lot caused by the taking, if you find there to be any."

We find nothing in the questions admitted or in the charge which supports the contention of the petitioners, in substance, that the experts under the rulings of the judge, and the jury under his instructions, were permitted to split up an area and give an opinion as to the market value

of the portion taken without considering the tract as a whole.

As respects the excluded evidence *supra* in the case of Baker the petitioner made no offer of proof and therefore we are unable to determine whether the exclusion of the evidence was prejudicial.

In each case the exceptions are overruled.

*So ordered.*